IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AHS HILLCREST MEDICAL CENTER, L.L.C., d/b/a HILLCREST MEDICAL CENTER,<br><br>    Plaintiff,<br><br>v.<br><br>APA VOLUNTARY SUPPLEMENTAL MEDICAL & CUSTODIAL CARE BENEFIT PLAN,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No.  05–CV–288–HDC–FHM<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

Before the Court is Defendant APA Voluntary Supplemental Medical & Custodial Care Benefit Plan's ("APA") Motion for Summary Judgment [Dkt. #25]. Plaintiff Hillcrest Medical Center ("Hillcrest") brought this lawsuit for review of APA's decision to pay only a part of the costs Hillcrest incurred in treating a participant in APA's health plan established under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et. seq. Because the Court concludes that APA abused its discretion in interpreting the plan at issue, the motion will be DENIED, and the case will be REMANDED.

### UNDISPUTED MATERIAL FACTS

1. Plaintiff AHS Hillcrest Medical Center d/b/a Hillcrest Medical Center provided medical treatment and services to BBG,[1] a participant in the plan.

2. Hillcrest submitted three separate claims for payment to APA; each claim exceeded $10,000. APA paid a total of $327,356.11 after processing the claims.

---

[1] For privacy reasons, the Court and the parties refer to the plan member by the member's initials.

3. The APA benefit plan grants discretionary authority to its fiduciaries.

4. A plan amendment effective January 1, 2003 provides that:

**WHAT HAPPENS TO YOUR CLAIM**

. . .

Once a written claim for benefits is received, the Claims Processor, acting on the authority of the plan fiduciary(s), may elect to have such a claim reviewed or audited for accuracy and reasonableness of charges as part of the adjudication process. Claims in excess of $10,000 are generally referred for review. This process may include, but not be limited to, identifying charges for items or services that may not be covered or may not have been delivered[,] duplicate charges, and charges beyond the *reasonable, necessary and customary guidelines* as determined by the Plan. This review or audit will be completed within the deadline described in the "Claims Process" section immediately below.

[italics added].

5. APA designated HealthFirst as its Claims Processor to perform "services described in the contract. . .in accordance with the terms and conditions of the Plans and within the framework of policies, interpretations, rules, practices and procedures made by the Plan Sponsor or Plan Administrator. . ."

6. APA designated Principal Performance Group, Inc. ("PPG") as its Large Claims Reviewer to review and audit claims in excess of $10,000 for "accuracy and reasonableness."

7. HealthFirst, on behalf of APA, entered into a written contract with PPG and established the parameters for PPG to apply to large claim reviews.

8. The parameters are set forth in the contract. Specifically, the contract provides:

Client understands and supports the removal of errors and unbundled items from provider billings. Client further understands and supports the Usual, Reasonable and Customary parameters as follows:

    a. Pharmacy Charges to be 200% of the Average Wholesale Price (AWP) as defined by REDBOOK. For drugs that have an AWP of more than $100 then it will be 110% of AWP.

    b. Medical/Surgical supplies to be reimbursed at 110% of AWP.

    c. Lab, X-Ray, Therapy and Physician charges are reimbursed at the 90th percentile of the Physicians Fee Reference.

    d. Implants are reimbursed at 110% of invoice.

    e. URC Database collected by PPG.

  9. PPG reviewed each of the claims at issue in accordance with the parameters established by HealthFirst and set out in the contract.

  10. For each claim decision at issue, HealthFirst forwarded Hillcrest a Notice of Benefit Denial. Each Notice advised Hillcrest that the claim was considered to be a "large claim" and was therefore sent to PPG for review. The Notice also informed Hillcrest of the parameters applied, and the specific reasons the particular charges were denied or partially denied. The Notice advised Hillcrest of its right to appeal the decisions, its right to submit additional information for review and consideration of additional benefits, and the type of documentation that should be submitted for consideration.

  11. Hillcrest submitted a written request to appeal.

  12. Each member of the Benefits Review and Appeals Board reviewed the materials submitted on appeal, applied the plan's language, and rendered individual decisions to uphold the initial claims decisions.

## STANDARD OF REVIEW

When a plan administrator has discretionary authority to determine benefit eligibility or construe the terms of the plan, a court reviews the administrator's decision for abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When the plan administrator has an inherent conflict of interest in making determinations on behalf of beneficiaries because those determinations will also have a direct financial impact on the plan administrator, the Court must consider the conflict in its review. *Fought v. UNUM Life Ins. Co.*, 379 F.3d 997, 1004 (10th Cir. 2004) (referring to the incorporation of the conflict into the abuse of discretion standard of review as the "sliding scale approach"). Under this sliding-scale-abuse-of-discretion approach, "the plan administrator must demonstrate that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence." *Id*. at 1006. Substantial evidence is "something less than the weight of the evidence," but is such that "a reasonable mind might accept as adequate to support a conclusion, even if different conclusions also might be supported by the evidence." *Webco Indus. v. Thermatool Corp.*, 278 F.3d 1120, 1128 (10th Cir. 2002).

The parties agree that APA possessed discretionary authority to determine benefit eligibility and construe the terms of the plan. The Court therefore reviews APA's decision to determine whether APA abused its discretion.[2] However, the precise standard of deference that applies to this case is unclear. Both parties make persuasive arguments as to what the standard should be, either

---

[2] The Tenth Circuit has sometimes called the standard "abuse of discretion" and at other times "arbitrary and capricious," but the Court considers them the same. *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 825 n.1 (10th Cir. 1996) (equating "abuse of discretion" review with the "arbitrary and capricious" standard).

the traditional abuse of discretion standard or the sliding scale approach. The Court, however, does not need to resolve this question because the Court concludes that APA's decision is an abuse of discretion under the traditional (and more deferential) abuse of discretion standard.

## CONCLUSIONS OF LAW

APA argues that its decision was a proper exercise of discretion because it was reasonable within the meaning of the 2003 amendment's language that claims will be reviewed for "accuracy and reasonableness,"[3] and because the outlier criteria[4] set forth in HealthFirst's contract with PPG is incorporated as part of the plan, such that claims identified as outliers can be reasonably denied.

Hillcrest responds that APA abused its discretion because it applied the standard of reasonableness as defined by the outlier criteria, rather than the plan's standard of "Usual and Prevailing fees." The plan defines "Usual and Prevailing fees" as:

> The maximum amount this Plan will pay for various medical provider fees. The extent to which a particular expense is Usual and Prevailing will be determined by the expenses generally submitted by medical providers in a particular area. Such expenses shall not exceed the 90th percentile (that is, what 90% of the medical providers charge for a particular service or supply) of the prevailing expenses in the geographical area for a service of the same type and length.

Plan at 42.

As already noted, when the plan grants the plan administrator discretionary authority to interpret the terms of the plan, the Court applies the abuse of discretion standard to the administrator's interpretation. *Firestone Tire & Rubber Co.*, 489 U.S. at 115. But, at a minimum, the administrator must do just that–interpret the plan. *See DeGrado v. Jefferson Pilot Fin. Ins. Co.,*

---

[3] *See* Undisputed Material Fact #4.

[4] *See* Undisputed Material Fact #s 7 & 8.

No. 05-1281, slip op. at 16 (10th Cir. June 28, 2006); *cf. Schwartz v. Oxford Health Plans, Inc.*, 175 F. Supp. 2d 581, 591 (S.D.N.Y. 2001). In this case, the Court concludes that APA has not done that because it has not applied a defined plan term to the facts before it.

APA takes the position that its 2003 plan amendment, which describes how claims are processed, adds a new standard for review of expenses: reasonableness. APA further argues that the meaning of reasonableness is defined by its third party claims processor's (HealthFirst) contract with an auditor (PPG). The Court concludes that APA has abused its discretion by interpreting the addition of one word in a paragraph detailing how claims are reviewed to change the meaning of what are "Usual and Prevailing" expenses covered by the plan. Under APA's reading, what was once a clear standard, that eligible medical expenses were those that fell within the 90th percentile rule, is now whatever APA or its claims processor says are reasonable. In effect, this interpretation would supplant a specific, defined term, which remains in the plan, with a generic, undefined term in a section of the plan that deals with the mechanics of claim processing.

It is notable that under the standard of review, the issue might be quite different if APA contended that its outlier criteria implemented the 90th percentile rule rather than changing it, but that is not what APA argued in its brief. Brief in Support of M. for S. Judgment at 12-13. APA attempts to analogize this case to an unpublished opinion of the Western District of Oklahoma in *HCA Health Services of Okla.v. Okla. Blood Inst.*, No. CIV-03-15-A, slip.op. at 10 (2004), but as APA notes in its analysis of that case, the court there relied on a plan provision that expressly allowed " 'additional consideration to be given to the severity, nature and complications of the illness or injury being treated.' " The court referred to that as a "safety valve" provision. *Id.* APA has not pointed to any similarly express language in its plan that would justify its

6

reasonableness/outlier criteria standard unmoored from its own definition of what is "Usual and Prevailing."

Having concluded that APA abused its discretion, the next issue is the proper remedy. The Court of Appeals' recent decisions make clear that remand to the plan administrator is available as a remedy. *DeGrado v. Jefferson Pilot Fin. Ins. Co.,* No. 05-1281, slip op. at 26 (10 th Cir. June 28, 2006); *Rekstad v. U.S. Bancorp*, No. 05-1146, slip op. at 14-15 (10th Cir. June 21, 2006). The court's opinion in *DeGrado* stated that if a plan administrator " 'fail[ed] to make adequate findings or to explain adequately the grounds of [its] decision,' " the proper remedy is to remand. Slip op. at 26 (quoting *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1288 (10 th Cir. 2002)). The court noted that "[i]n contrast, a retroactive reinstatement of benefits is proper where, but for the plan administrator's arbitrary and capricious conduct, the claimant 'would have continued to receive the benefits or where there [was] no evidence in the record to support a termination or denial of benefits.'" Id. (quoting *Cook v. Liberty Life Assur. Co. of Boston*, 320 F.3d 11, 24 (1 st Cir. 2003). Because this case turns on an unreasonable interpretation of the plan rather than a lack of evidence to support APA's decision, the Court finds that remand to APA's Benefit Review and Appeal Board is appropriate, so that body or its designee can evaluate Hillcrest's claim under a proper construction of the plan terms.

Accordingly, APA's Motion for Summary Judgment [Dkt. #25] is **DENIED** and this case is **REMANDED** to the APA Benefit Review and Appeal Board. **IT IS FURTHER ORDERED** that this case shall be administratively closed and may be reopened upon proper motion for further review of APA's ultimate determination. LCvR 41.1.

**IT IS SO ORDERED** this 30th day of June, 2006.

*[signature]*

HONORABLE H. DALE COOK
Senior United States District Judge